(95 South. 819)

### LAWS v. STATE.   (8 Div. 504.)

(Supreme Court of Alabama. April 5, 1923.)

**1. Witnesses ⬥389—Statement to deputy sheriff held competent to contradict defendant's testimony.**

Where defendant testified that he had no conversation with the deputy sheriff, who brought him back from another state, about the shooting, testimony by the deputy sheriff in rebuttal that the defendant made a statement to him while they were returning from the other state, giving a different account of the shooting from defendant's testimony at the trial, was clearly admissible to contradict defendant's testimony.

**2. Criminal law ⬥364(6)—General statement declaration was made right after shooting yields to detailed statement of actions.**

A general statement by a witness, that he went right out on the porch immediately after the shooting occurred, must yield to detailed statements by him of the actions by another witness, intervening between the time of the shooting and the time the witness went out on the porch, in determining whether declaration to the witness by defendant was res gestæ.

**3. Criminal law ⬥363—"Res gestæ" defined.**

"Res gestæ" is a matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood; they are instinctive words and acts of the participants, growing out of the main fact, contemporaneous with it, and made so soon thereafter as to exclude the presumption they result from premeditation or design.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Res Gestæ.]

**4. Criminal law ⬥364(6)—Declaration of defendant shooting was accidental held not res gestæ.**

Evidence that, between the time of the shooting and the time witness heard a declaration by defendant that the shooting was accidental, another witness had come from the porch, where the shooting occurred, into the room, and, after waiting there a short time, had taken a lamp and gone out onto the porch, shows that the declaration was not part of the res gestæ, but a narrative of a past transaction.

Appeal from Circuit Court, Madison County; Robert C. Brickell, Judge.

Ed Laws was convicted of murder in the second degree, and he appeals. Affirmed.

S. H. Richardson and E. D. Johnston, both of Hunstville, for appellant.

The declaration of defendant sought to be elicited from witness Robinson was a part of the res gestæ and should have been admitted. Burns v. State, 49 Ala. 370; Gandy v. Humphries, 35 Ala. 617; Clark v. Davis (Minn.) 190 N. W. 45; Dismukes v. State, 83 Ala. 287, 3 South. 671; Ala. Gt. So. v. Hawk, 72 Ala. 112, 47 Am. Rep. 403; Hall v. State, 208 Ala. 199, 94 South. 61; Jones on Ev. § 142. It was error to overrule defendant's objection to the impeaching evidence of the witness Strong. Hardy v. State, 18 Ala. App. 319, 91 South. 891.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

GARDNER, J. Appellant was convicted of murder in the second degree, and appeals.

Defendant was charged with the murder of Bettie Williams, and one Willie Lowe testified for the state as an eyewitness to the killing. Her testimony tended to show that defendant came to the house of Bettie Williams and began cursing, whereupon he was told to leave, which he did, going into the yard continuing his cursing. Bettie Williams followed, telling him to leave the yard —she being "down off the porch" at the time, and when she turned to go back on the porch the defendant shot her in the head with a pistol, then came to where deceased lay, turned her head to one side, and said, "I sure did kill her"; that defendant then went out the gate and up the street. He was arrested in Kentucky, and brought to Huntsville for trial.

The defendant insisted the shooting was accidental; that he was sitting on the porch at Bettie Williams' house—she being on the left of him—and was demonstrating to her "how to work" the pistol which belonged to her, and, as some one called her, the pistol was accidentally discharged.

[1] The defendant further testified that Mr. Strong, a deputy sheriff, brought him from Kentucky, but that he had no conversation with him, and that he did not state to Mr. Strong that, at the time of the killing, he (defendant) was sitting in an automobile with a woman, and that the pistol went off and shot the woman on the porch. To use the language of the witness, "I had no conversation about the shooting at all." Strong had previously testified as to bringing the defendant from Kentucky in the month of February of that year. After defendant had rested his case, the state was permitted to recall Mr. Strong, who testified that, at the time he brought the defendant from Kentucky, the defendant stated to him that when the killing occurred he was in an automobile with a woman, and that the pistol went off and shot this woman standing by the porch. This evidence was clearly admissible by way of contradiction of defendant's testimony, and his objection was properly overruled.

[2] The defendant offered as a witness one Robinson, who was inside of the room of the house when the shot was fired. The porch of the house adjoined this room. Robinson stated he heard the shot, and that after the shot was fired he saw Willie Lowe, the state's witness, previously referred to, come into the house and get the lamp off the shelf in the middle room where there was dancing, the witness saying: "Willie Lowe stayed a few minutes and come on back and got the lamp." The testimony of this witness further shows that when Willie Lowe went back on the porch with the lamp he (witness) followed her, and that he saw defendant holding Bettie Williams in his arms. He was then asked by the defendant what he heard defendant say at that time. The objection of the state to that testimony was sustained. Counsel stated to the court that the purpose of the question was to show that at this time the defendant stated he was sorry the deceased was shot, and that it was an accident and could not be helped. It is insisted that this testimony was admissible as a part of the res gestæ.

It is true, in answer to general question as to how long it was from the time he heard the shot until he reached the porch and heard the defendant make the statement, the witness answered, "I came right on out;" and to the next question, "Immediately upon hearing the shot?" he answered, "Yes, sir;" and to the next, "How many steps did you have to make?" he answered, "Four or five steps." But the answers to these rather general questions must be considered in the light of the more detailed statement of facts given and the circumstances as disclosed from his testimony, to which we have above referred. When the testimony is thus considered, we are persuaded that the declaration of the defendant, offered to be shown by the witness Robinson, was not admissible as of the res gestæ.

[3] The courts recognized the difficulty in laying down, upon the subject of res gestæ, a rule that may be applied in every case, but when such declarations are admissible is a matter largely dependent upon the particular circumstances under which they are made. As said by this court in Burns v. State, 49 Ala. 370:

"It is impossible to define accurately the declarations which should be treated as parts of the res gestæ."

The following quotation containing a definition of res gestæ, found in 10 R. C. L. 974, appears to be supported by the authorities generally, including those of this court:

"Res gestæ may be broadly defined as matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are the events themselves speaking through the instinctive words and acts of the participants; the circumstances, facts, and declarations which grow out of the main fact are contemporaneous with it and serve to illustrate its character. All declarations or exclamations uttered by the parties to a transaction which are contemporaneous with and accompany it, or which are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design, and which are calculated to throw light on the motives and intention of the parties, are admissible in evidence as part of the res gestæ."

See, also, Kennedy v. State, 85 Ala. 326, 5 South. 300; Burns v. State, supra; Moses v. State, 88 Ala. 78, 7 South. 101, 16 Am. St. Rep. 21; Smith v. State, 183 Ala. 10, 62 South. 864; Dismukes v. State, 83 Ala. 287, 3 South. 671; Birminghan Macaroni Co. v. Tadrick, 205 Ala. 540, 88 South. 858; Hall v. State, 208 Ala. 199, 94 South. 59.

[4] A careful consideration of the evidence of witness Robinson discloses that any declarations which he might have heard the defendant make at the time when he came on the porch would not be contemporaneous with the killing, or so closely connected therewith as to constitute a part thereof, or that they were made under such circumstances as to raise the reasonable presumption that they were spontaneous utterances created by or springing out of the killing. On the contrary, we are of the opinion such a declaration would be but a narrative of a by-gone transaction, and only useful as a self-serving declaration.

We have here treated the two questions argued by counsel for appellant, and find

they are the only matters presented in this record deserving of serious consideration.

No error appearing, the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.